IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **ANTONIO MARTINEZ**<br>Prisoner No. BG9424<br>SCI-Mahanoy<br>301 Morea Rd<br>Frackville, PA 17932**,**<br><br>            **Petitioner,**<br><br>                        v.<br><br>**THERESA DELBALSO,**<br>**et al.,**<br><br>            **Respondents.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br><br><br>No. 19-5606 |

## **MEMORANDUM ORDER**

**AND NOW**, this 22nd day of April, 2020, upon consideration of Petitioner's "Unopposed Emergency Motion for Bail Pending Resolution of Habeas Corpus Petition" (ECF No. 14), Petitioner's "Petition for Writ of Habeas Corpus" and all accompanying attachments (ECF No. 1), Respondents' response to the petition and all accompanying attachments (ECF No. 13), and counsel for Petitioner's letter dated April 16, 2020 (ECF No. 19), and following three on-the-record telephone conferences held on April 10, 2020, April 14, 2020, and April 21, 2020, I find as follows:

       1.   Currently pending before me is a habeas corpus petition, filed on November 27, 2019, by Petitioner, Antonio Martinez, who was convicted in 1985 of first-degree murder and voluntary manslaughter.  On January 3, 2020, I referred that petition to Magistrate Judge Marilyn Heffley for a Report and Recommendation, which is also presently pending.

1

2. On April 8, 2020, Petitioner filed an emergency motion for bail. Petitioner asks that I release him to be confined at the home of his son, pending the resolution of his habeas corpus petition. Respondent, the Philadelphia District Attorney's Office, agrees and joins in this request.

3. The basis for Petitioner's bail request is two-fold. First, he asserts that substantial discovery was withheld from his trial counsel in violation of his due process rights and Brady v. Maryland, 373 U.S. 83 (1963). That discovery includes eyewitness statements that implicated other persons in the shooting deaths of the two victims—Hector and Luis Camacho. Second, Petitioner alleges that, because he is 72 years old and in ill health, he is at high risk for contracting COVID-19 while incarcerated.

4. The United States Court of Appeals for the Third Circuit has recognized the authority of a district court to grant bail to a state or federal prisoner when his habeas corpus petition is pending. See Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992) (citing United States v. Smith, 835 F.2d 1048, 1050 (3d Cir. 1987) (federal prisoner) and Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986) (state prisoner)); see also Nikolic v. Decker, No. 19-6047, 2020 WL 1304398, at *1–2 (S.D.N.Y. Mar. 19, 2020) (acknowledging federal court's "inherent authority to grant bail to a habeas petitioner who is properly before it contesting the legality of his custody" but denying COVID-19 related bail motion where petitioner could not "demonstrate that his habeas petition raise[d] substantial claims" given that the court had already denied petition).

5. A grant of bail is appropriate in habeas cases where (1) the petitioner has raised "substantial constitutional claims upon which he has a high probability of success" and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Id. (internal quotation marks omitted).

6. Although very few cases have presented the sort of circumstance considered "extraordinary" enough to grant bail, a prisoner's poor health or the impending completion of his sentence have both been recognized as warranting this kind of relief. Id. (citing Johnston v. Marsh, 227 F.2d 528, 529 (3d Cir. 1955) (poor health) and Boyer v. City of Orlando, 402 F.2d 966, 968 (5th Cir. 1968) (short sentence remaining)).

7. Due to the current COVID-19 pandemic and cessation of all court proceedings, review of the alleged Brady materials, without the benefit of in-court discussion with counsel, has been extremely difficult. Telephonic proceedings in this emergency matter have also proven less than optimal, although I did conduct three on-the-record telephonic hearings, on April 10, 2020, April 14, 2020, and April 21, 2020. Due to the COVID-19 situation, Petitioner, who is in state custody, did not participate.

8. Despite these difficulties, I have reviewed all available state court opinions, including the trial court's opinion and that of the Pennsylvania Superior Court. The trial record establishes that at least one witness firmly identified Petitioner as the shooter. However, the trial judge had reservations about the credibility of this eyewitness and, in ruling on post-trial motions, found that he had erred in cutting off the cross-examination of this eyewitness. The trial judge also found that Petitioner's trial counsel was ineffective for not calling the eyewitness' attorney to elaborate on alleged deals made between the witness and the Philadelphia Police Department. (App. 9–13). As a result, the trial court concluded that Petitioner must be given a new trial. (App. 12.) The Pennsylvania Superior Court disagreed, finding that the eyewitness' bias had been sufficiently disclosed, and affirmed the convictions. (App. 25, 29.)

9. Petitioner and the Philadelphia District Attorney's Office have also identified numerous documents to support a "high probability of success on the merits" regarding Petitioner's

habeas petition. Most importantly, they have produced voluminous reports and interviews from the Philadelphia Police Department, which, according to the parties, were only recently discovered by the Philadelphia District Attorney's office in the police homicide file. The parties agree that these materials were suppressed in violation of Brady, and, therefore, present a "substantial constitutional" claim.

10. I have carefully reviewed these materials, and there is no question that the documents provided by the parties contain interviews of witnesses who identify persons other than Petitioner as the shooter. The police records allegedly recently discovered also contain information regarding a clear motive for at least one of the other suspects to have committed the homicides.

11. If this information was, in fact, not turned over to Petitioner's counsel during the pre-trial or trial phase of this case, it seems that a significant Brady problem exists. The information allegedly not disclosed includes, but is not limited to:

- A March 15, 1989 interview with Carlos Diaz, wherein he relays that he knew that the victims were selling drugs for a Wilson Santiago and "burning Wilson." Diaz states that, before the murders, he heard Santiago state, "I'm going to kill those guys. . . . [T]hey take my dope, they take my money. I'm going to kill them." (App. 94–98.)

- A September 18, 1985 interview of Heriberto Ramirez, wherein he indicates that he observed "Freddy, Wilson's brother-in-law come from behind PAPA [identified in other interviews as victim Hector Camacho] and point a gun to the back of his head and shot him. . . ." A subsequently created "Activity Sheet" prepared by Philadelphia Police Department personnel identifies "Freddy" as the brother-in-law of William Santiago, who was at the scene of the shooting. (App. 59–66.)

- An October 23, 1985 "Activity Sheet" prepared by Philadelphia Police Department personnel summarizing a conversation with a "Chief" at the Philadelphia District Attorney's Office, which states that a William Santiago was suspected of the shootings. (App. 79.)

- Undated, handwritten notes that list "possible defendants" as "1. Wilson Santiago . . . ," identifying the motive as being money owed for drugs sold. The same notes also list

    Wilson Santiago's brother, Miguel Santiago, as the other suspect and "one of the shooters." (App. 80–82.)

– An October 24, 1986 "Activity Sheet" prepared by Philadelphia Police Department personnel of an interview with Maria Torres, stating that she observed one of the victims enter the store of Wilson Santiago, then heard an argument, followed by gun shots. Ms. Torres then observed "Wilson Santiago drag the body of a person out of the store to the sidewalk." She also states that "Manuel Santiago," brother of Wilson Santiago, then shot Luis Camacho. (App. 88.)

12. The above summary represents substantial and compelling evidence that someone other than Petitioner may have been responsible for the shootings.

13. However, proof that the above information was not turned over to Petitioner until recently is somewhat unclear and, at best, circumstantial. While the May 30, 1989 discovery transmittal letter from the assigned trial prosecutor does not list any of the evidence set forth above as having been produced, that document is incomplete, consisting only of a single page without a signature. (App. 32.) It further complicates matters that trial counsel for Petitioner is deceased, thus preventing his explanation as to whether the above-referenced information was, in fact, withheld.

14. The presently assigned prosecutor has also advised that no attempts were made by her office to contact the Assistant District Attorney who tried the case. When asked why the trial prosecutor had not been interviewed, the currently assigned Assistant District Attorney stated that her office had not done so because of the office's "deteriorated" relationship with the former prosecutor and his "credibility issues." (Hearing Tr., 4/14/20, 28:18–24.) The currently assigned Assistant District Attorney also acknowledged that none of the assigned detectives were contacted in an effort to further develop the record on the issue of whether exculpatory evidence was withheld. Petitioner's counsel also declined to contact the trial prosecutor or the assigned detectives. I find these unasked questions by both counsel to be somewhat troubling.

15. Understanding that resurrecting matters from the mid-1980s is difficult, questions nonetheless remain as to whether the obviously discoverable exculpatory evidence detailed above was actually withheld and, if so, whether it was done so purposefully or negligently by the Philadelphia Police Department and/or the then-assigned Assistant District Attorney.

16. Conversely, I note that the trial record makes no mention of these <u>Brady</u> documents, and the fact that defense counsel and the trial judge were silent regarding these documents increases the likelihood that they were never disclosed to Petitioner or his trial counsel.  The currently assigned Assistant District Attorney has also represented that none of the documents in question were contained in the Philadelphia District Attorney's file and were only recently located in the separate police homicide file.

17. In addition to the merits of his underlying habeas petition, Petitioner also argues that bail should be granted due to the COVID-19 pandemic.  He emphasizes that he is 72 years old and is at high risk for contracting the virus.  Petitioner has suffered two heart attacks, has high blood pressure, and a persistent cough.  As of the April 21, 2020 telephone conference with the parties, there have been no confirmed cases of COVID-19 at the institution where Petitioner is incarcerated.

18. The seriousness of the COVID-19 pandemic and its likely effect on the prison population is well documented and need not be re-counted here.  (<u>See</u> Pet. Mot., ECF No. 14, at 4–6.)

19. Given all of the evidence detailed above, which was clearly <u>Brady</u> material, the likelihood that it was not produced to Petitioner's trial counsel, and the District Attorney's vigorous insistence that this exculpatory information was withheld and only recently discovered, I conclude that Petitioner has raised "substantial constitutional claims upon which he has a high

probability of success."  And, because of his age, ill health, and the COVID-19 pandemic, I also find that "extraordinary circumstances" exist.  Both of these factors, taken together, warrant that bail conditions be set, as detailed below.

20. In granting this relief, I emphasize that a thorough, on-the-record evidentiary hearing will be held before any final ruling on Petitioner's habeas petition is considered.  While I will carefully consider the views of both parties in issuing my final ruling, I note that I am not obligated to accept the District Attorney's concession of habeas relief and that an independent evaluation of the petition's merits will occur.  See Sibron v. New York, 392 U.S. 40 (1968); Young v. United States, 315 U.S. 257, 258–259 (1942); see also Commonwealth v. Brown, 196 A.3d 130, 141–49 (Pa. 2018) ("[I]f the 'power' of a court amounts to nothing more than the power 'to do exactly what the parties tell it to do, simply because they said so and without any actual merits review, it is not judicial power at all.  It is a restriction on power.'").

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's Unopposed Emergency Motion Pending Resolution of Habeas Corpus Petition is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner shall, during the pendency of habeas proceedings, be confined to the home of his son, Pedro Antonio Alicea, Jr., with telephone monitoring to be overseen by U.S. Pretrial Services for the Eastern District of Pennsylvania ("Pretrial Services").  The frequency of this monitoring will be at the discretion of Pretrial Services, who will also have the discretion to conduct in-person (safe distance) compliance visits.  Petitioner shall be confined to his home, except for medical appointments and/or to obtain employment.  Petitioner may only leave his home with prior approval of Pretrial Services, and any authorized travel shall be confined to the Eastern District of Pennsylvania.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**