### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **ANTONIO MARTINEZ,** | : | **CIVIL ACTION** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **No. 19-5606** |
| | : | |
| **THERESA DELBALSO,** | : | |
| **et al.,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

### <u>ORDER</u>

**AND NOW**, this 1st day of December, 2020, following a conference with counsel on November 4, 2020, my review of the entire procedural history of this case, and pursuant to the Court's continuing authority to consider issues of a collateral nature after an action is no longer pending,[1] it is hereby **ORDERED** that **by no later than January 8, 2021**, counsel for Petitioner and Respondents **SHALL**, as outlined at the conclusion of this Order, show cause why the conduct described below did not violate Pennsylvania Rule of Professional Conduct 3.3(a)(1) (candor to the tribunal)[2] and/or counsel's continuing duty to advise the Court of any material developments that could have affected the outcome of litigation before me. See In re Universal Minerals, Inc.,

---

[1] See Bechuck v. Home Depot U.S.A., Inc., 814 F.3d 287, 291 (5th Cir. 2016) ("[T]hat the court loses jurisdiction over the litigation does not, however, deprive the district court of its inherent supervisory powers.  It is well established that a federal court may consider collateral issues after an action is no longer pending . . . ."); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990) (same).

[2]      The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania.  See Local Civil Rule 83.6 (Rule IV).

1

755 F.2d 309, 313 (3d Cir. 1985) (quoting Fusari v. Steinberg, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)) (recognizing counsel's continuing duty to inform the court of developments that could affect the outcome of litigation).  It is further **ORDERED** that counsel **SHALL** identify the specific dates upon which they first became aware of any and all facts undermining, modifying, or otherwise amending the Philadelphia District Attorney's Office's stated reasons for waiver of state court exhaustion.  I have provided the following background to assist counsel in their responses, and so that they may fully understand my concerns.

1.    On February 19, 1985, Hector and Luis Camacho were shot and killed in Philadelphia, Pennsylvania.  After a bench trial, held on May 2, 1990, Petitioner Antonio Martinez was convicted in the Philadelphia County Court of Common Pleas of first-degree murder and voluntary manslaughter for these shooting deaths.  Martinez was subsequently sentenced to life without parole.  Over the next thirty years, his convictions were appealed and extensively litigated, including multiple post-conviction relief proceedings in state court.  Until recently, no outcome in any state court proceeding disturbed the convictions.

2.    Martinez's most recent state court filing was a Post-Conviction Relief Act ("PCRA") petition that he filed *pro se* on March 26, 2019.

3.    On November 27, 2019, while that PCRA petition was still pending in state court, Martinez, with the assistance of current counsel, initiated the proceeding before me in federal court by filing a petition for writ of habeas corpus.  In that petition, Martinez asserted that, prior to the 1990 trial, the Philadelphia District Attorney's Office ("District Attorney"), through the assigned Assistant District Attorney ("Trial ADA"), had suppressed information favorable to his defense as prohibited by Brady v. Maryland, 373 U.S. 83 (1963), thus requiring that his convictions be vacated.

4.      In its response, on April 6, 2020, the District Attorney agreed that significant Brady violations had occurred.  The District Attorney also acknowledged that Martinez had filed a state court post-conviction relief petition that was currently pending.  Although Martinez had not fully exhausted his claims in state court, the District Attorney, apparently aware of the well-settled precedent requiring that all state court matters be fully resolved before a federal habeas claim may proceed, affirmatively advised me that the District Attorney was waiving all procedural and exhaustion defenses.  The District Attorney identified the following reasons in support of this unusual waiver: (1) "it appears that this Court is better equipped to address [Martinez's] claims in an expedient fashion"; (2) "Martinez has the benefit of pro bono representation in this matter, but he is uncounseled in his state court petition and has no right to the appointment of counsel in those proceedings"; (3) "his state petition has been assigned to a judge who is unacquainted with the record in this case, while this Court has the benefit of familiarity as it recently reviewed Martinez's first habeas petition"; and (4) "given the current COVID-19 pandemic, the state courts have essentially closed . . . [and] it is unknown when they will resume operations."  (Resp. to Pet. at 26–27.)  The District Attorney stated that "[i]n order to facilitate a timely review (and correction) of the constitutional errors in this case, the Commonwealth will not assert and affirmatively waives any and all non-jurisdictional procedural bars that would otherwise prevent this Court from considering the merits of Martinez's claims or issuing appropriate relief."  (Id. at 27.)

5.      Counsel for Martinez also acknowledged that Martinez had "not fully exhausted the claims asserted in this habeas petition in state court as required by 28 U.S.C. § 2254(b)(1)(A)" and confirmed that "[p]rior to the filing of this petition, [the District Attorney] informed counsel for Mr. Martinez that they intend to waive any non-exhaustion and/or procedural default defenses." (Pet'r's Mem. of Law at 24.)

6.      The above-referenced waiver was necessary because Martinez was required by clearly established law to fully exhaust his pending PCRA petition in state court before I could grant him relief on those same claims: "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall *not* be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. § 2254(b)(1)(A) (emphasis added).  The District Attorney and counsel for Martinez both explicitly acknowledged this requirement.  (Pet'r's Mem. of Law at 24; Resp. to Pet. at 26.)  The District Attorney also recognized the important principles that justify the exhaustion requirement, stating: "Certainly, the principles of federalism and comity that animate the exhaustion requirement are important considerations in the [waiver] analysis."  (Resp. to Pet. at 26.) According to the District Attorney:

> The exhaustion requirement both "expresses mutual respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions, and properly acknowledges that state courts, no less than federal courts, are bound to safeguard the constitutional rights of state criminal defendants." *Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir. 1990); *see also Rose v. Lundy*, 455 U.S. 509, 518 (1982) (exhaustion doctrine protects state courts' role in enforcement of federal law and prevents disruption of state judicial proceedings); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (same).

(Id. at 26 n.14.)

7.      I relied upon and accepted the District Attorney's waiver of exhaustion and the reasons for that waiver with the expectation that counsel had decided to litigate this matter only in federal court.

8.      After I was advised that the District Attorney agreed that significant Brady material had been suppressed by the Trial ADA in 1990, both counsel urged that this matter necessitated my immediate attention.  Relying on their representation, I proceeded to expend significant time and resources evaluating the merits of Martinez's federal claim.  This included, but was not limited

to, (1) extensive review of the materials claimed by counsel to have been withheld by the Trial ADA; (2) six conferences between April 2020 and October 2020; (3) the consideration of Martinez's motion for bail; (4) a Memorandum Order granting that motion for bail; (5) an emergency revocation of the grant of bail after the District Attorney belatedly advised me that Martinez was a potential fugitive from outstanding homicide charges in Puerto Rico; (6) the consideration of supplemental evidence offered by the parties; (7) the coordination and scheduling of an evidentiary hearing on Martinez's habeas claims, which included extensive discussion about whether the Trial ADA should testify regarding the alleged <u>Brady</u> violations; and (8) the consideration of a motion for clarification filed by the District Attorney.

9.      As noted above, based on my extensive review of the documents supplied by counsel, which seemingly indicated that a <u>Brady</u> violation had occurred, and upon consideration of other "extraordinary circumstances," I initially granted Martinez bail pending resolution of his habeas petition.  This decision was premised on assurances by both counsel that there was no reason (e.g., prior failures to appear, violent prior convictions) why bail should not be granted. Having received those assurances, on April 22, 2020, I issued an order releasing Martinez pending a full habeas hearing.  Two days later, I was advised by the District Attorney that the Pennsylvania corrections facility where Martinez was incarcerated had reported that he was wanted for homicide in Puerto Rico.  Thus, my bail Order had to be vacated that same day.

10.      As also noted above, I scheduled an evidentiary hearing on Martinez's habeas petition for November 10, 2020.  In discussing the evidence to be presented at that hearing, I asked counsel whether they had interviewed either the Trial ADA or the assigned detectives regarding the withheld <u>Brady</u> material and learned that neither counsel had done so.  When I asked why the Trial ADA had not been interviewed, the currently assigned Assistant District Attorney stated that

her office's relationship with the former prosecutor had "deteriorated" and that she was concerned about his "credibility issues." (Tr., 4/14/20, 28:18–24.) Nonetheless, I insisted that the Trial ADA testify before I would decide whether the requested relief was appropriate. This testimony was especially important because the District Attorney conveyed to me that the Trial ADA had reported the existence of several "critical" misstatements in the District Attorney's filings. (See District Attorney's Notice of Compliance, ECF No. 32, at ¶ 7 ("[The Trial ADA] further indicated that he believed there were 'several critical factual inaccuracies' in the Commonwealth's brief, but did not specifically identify any.").)

11.    On October 23, 2020, approximately two weeks before the evidentiary hearing at which the Trial ADA was prepared to testify, the parties filed a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). In the Stipulation, counsel for the parties reported that, on that same day, October 23, 2020, the state court held a hearing on the merits of Martinez's post-conviction relief petition and vacated Martinez's homicide convictions and life sentence, thus mooting the habeas petition before me. Apparently, Martinez has been released and the Puerto Rico homicide charges are no longer an issue.

12.    I thereafter scheduled a telephone conference for November 4, 2020, in order to discuss the Stipulation of Dismissal with counsel. The District Attorney objected to this call, arguing that I lacked jurisdiction because the habeas petition had been voluntarily dismissed. I overruled those objections based on my inherent authority to retain jurisdiction over an action no longer pending before me in order to consider issues of a collateral nature. See, e.g., Cooter & Gell, 496 U.S. at 395; Haviland v. Specter, 561 F. App'x 146, 150 (3d Cir. Mar. 20, 2014); see also Bechuck, 814 F.3d at 291 (5th Cir. 2016). On that call, I asked why, given the clear and unequivocal waiver of state court exhaustion, I was not informed about the state court proceedings.

In response, counsel for Martinez acknowledged that it was "discourteous" to not inform me of the developments in the state court proceedings and offered an apology. (Am. Tr., 11/4/2020, at 27:13–17.) Counsel for Martinez explained that he had determined that there was no "legal bar to [his] bringing this case in state court" and no "ethical bar to [his] litigating this [matter] in state court." (Id. at 26:1–15.) But that explanation did not address whether counsel also had a dual duty to be candid with the federal court.

13.     The Assistant District Attorney represented to me that she "absolutely believed that [she] didn't have any legal obligation to notify [me] as soon as [counsel for Martinez] made an appearance in state court." (Id. at 35:18–25.) The Assistant District Attorney stated that "it has been [her] experience so far that federal writs of habeas corpus along with state court PC[R]A actions in the State of Pennsylvania are parallel court proceedings." (Id. at 38:6–9.) She added, "I am aware of many situations where you can have cases going forward on that parallel track and what I had seen in my experience since I've been here in Philadelphia is sometimes what you do is you say that I don't want them both going forward at the same time. So you might say, I want to request a stay in one such that you could litigate in the other." (Id. at 38:9–15.)

14.     The Assistant District Attorney's statement that there are "many situations" in which federal habeas and state post-conviction relief matters proceed at the same time is inapplicable to the scenario before me where the merits of a post-conviction matter were proceeding simultaneously in both state and federal court when the federal court was unaware that this was occurring. Indeed, if parallel federal habeas and state court PCRA matters could proceed at the same time in this context, then 28 U.S.C. § 2254's exhaustion requirement, and, by

7

extension, the state's ability to waive exhaustion, would be meaningless.[3] I am aware of no other situation in which a state prosecutor has affirmatively waived the state court exhaustion of a federal habeas claim, extensively litigated that claim in federal court, and then decided, during the pendency of that federal proceeding, to also litigate to disposition the same post-conviction claim in state court without advising the federal court that this was occurring. Counsel will be given an additional opportunity to explain this highly unusual circumstance.

15. Only *after* the significant attention that I gave this matter was set to culminate in an evidentiary hearing, at which the Trial ADA was scheduled to testify about the alleged suppression of exculpatory evidence and explain what he had referred to as misstatements made by the District Attorney, was I informed, for the first time, that the myriad reasons for the District Attorney's waiver of exhaustion were no longer applicable. For example:

- The District Attorney initially stated that it wanted to proceed in federal court because I was "better equipped" to address Martinez's claims in an expedient fashion. Yet, unbeknownst to me, counsel for the parties later decided that the state court was, in fact, better equipped to hear Martinez's claims. They went to great lengths to expeditiously litigate this post-conviction issue in state court, which included the filing of briefs on the merits of Martinez's claim and participation in a hearing before a state court judge.

- The District Attorney initially stated that it wanted to proceed in federal court because Martinez was uncounseled in his state court petition. Yet, thereafter and unbeknownst to me, counsel for Martinez entered an appearance in state court.

- The District Attorney initially stated that it wanted to proceed in federal court in this matter because the state petition had been assigned to a judge who was unacquainted with the record in this case when I was already familiar with it. Yet, again, without advising me,

---

[3] It is true that habeas proceedings involving a petitioner could, in some instances, conceivably proceed concurrently with a state court proceeding brought by the same petitioner but in the context of mixed habeas corpus petitions, i.e., habeas petitions that contain both exhausted and unexhausted claims. If, in its discretion, the district court allows the federal proceeding to move forward, it would be on the already exhausted habeas claims, while the state court heard the unexhausted claims. See, e.g., Crews v. Horn, 360 F.3d 146, 154 (3d Cir. 2004). But, where a mixed petition is involved, the district court is most often deciding between either a stay of the federal matter or dismissal of the habeas petition. See id.

counsel went to great lengths to fully acquaint the state court judge with the claim at issue, so that the state court judge could fully conclude the matter at the October 23, 2020 hearing.

- The District Attorney initially stated that it wanted to proceed in federal court because, given the current COVID-19 pandemic, the state courts had essentially closed and it was unknown when they would resume operations. Yet, again, unbeknownst to me, the state court scheduled a hearing on Martinez's claim in which counsel for the parties fully participated.

16. Every attorney has a duty of candor toward the tribunal. See Pa. Rule of Prof'l Conduct 3.3. Rule 3.3(a)(1) provides that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Id. Counsel has a duty to correct a statement that is false, even if the attorney believed it to be true at the time the statement was made and only later discovers its falsity. See, e.g., Artesian Water Co. v. Chester Water Authority, No. 10-7453, 2014 WL 4851498, at *21 (E.D. Pa. Sept. 30, 2014).

17. Attorneys are also bound by a "broader duty of candor and good faith required to protect the integrity of the entire judicial process." U.S. v. Shaffer Equip. Co., 11 F.3d 450, 458 (4th Cir. 1993). As an officer of the court, an attorney has, "[a]bove and beyond the dictates of courtesy, . . . 'a continuing duty to inform the Court of any development which may conceivably affect an outcome' of the litigation." In re Universal Minerals, Inc., 755 F.2d at 313 (quoting Fusari, 419 U.S. at 391); see also Walter v. Se. Pa. Transp. Auth., No. 05-418, 2007 WL 966227 at *10 (E.D. Pa. March 28, 2007) (finding that plaintiff's counsel's failure to inform the court or defense counsel of accommodations that plaintiff received after the filing of his disability failure to accommodate claim did not "comport with counsel's duty of candor" under In re Universal Minerals, Inc.); Calleros v. FSI Int'l, Inc., 892 F. Supp. 2d 1163, 1168 n.6 (D. Minn. 2012) (reasoning that it "seems fairly apparent counsel have flouted" their candor obligation in failing to inform the court in a federal securities fraud case about almost identical proceedings in state court);

U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., 540 F. Supp. 2d 994, 997 n.1 (N.D. Ill. 2008) (citing Cleveland Hair Clinic, Inc. v. Puig, 200 F.3d 1063, 1067–68 (7th Cir. 2000) (noting that counsel should have informed the court about a parallel administrative proceeding concerning the same subject matter).

18.     Given all of the above, and after careful review of counsel's explanations for their conduct, I have continuing concerns about their candor to this Court.  The question is: given counsel's clear representations that Martinez's federal claim can and should proceed, despite the lack of state court exhaustion, did counsel have an obligation to advise the federal court that the state court matter was being fully litigated, simultaneously with the federal matter?  Counsel will have until January 8, 2021 to respond in writing to this issue.  Whether a further hearing on the record will be scheduled thereafter is held under advisement pending my review of counsel's submissions.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**

10