**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ANTONIO MARTINEZ,** | ) | |
| Petitioner | ) | No. 2:19-cv-05606-MSG |
| | ) | |
| v. | ) | |
| | ) | |
| **THERESA DELBALSO, et al.,** | ) | |
| Respondents. | ) | |

**BRIEF *AMICI CURIAE* FOR LEGAL PRACTITIONERS
AND LEGAL SCHOLARS**

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY ........................................................................ 1

II.  STATEMENT OF INTEREST ................................................................................ 3

III. STATEMENT OF FACTS ...................................................................................... 4

IV.  ARGUMENT ........................................................................................................... 9

     A.   Counsel Did Not Violate the Duty of Candor to a Tribunal ................................ 9

          1.   Counsel's duty of candor is not implicated based on the timing of counsel's knowledge of new events and counsel's disclosures to the court. ........................................................................................................ 9

          2.   Counsel neither failed to correct a material false statement nor failed to notify the court of a development that could conceivably affect the matter's outcome. ............................................................................12

     B.   Sanctions Are Not Appropriate ........................................................................20

     C.   The "Continuing Duty to Inform the Court" Should Be Narrowly Construed...........................................................................................................22

APPENDIX: AMICI SIGNATORIES ................................................................................ A-i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Artesian Water Co. v. Chester Water Auth.*, No. CIV.A. 10-7453, 2014 WL
4851498, at *21 (E.D. Pa. Sept. 30, 2014) ..............................................................22

*Bistrian v. Levi*, 448 F. Supp. 3d 454 (E.D. Pa. Mar. 24, 2020)....................................21

*Bowers v. NCAA*, 475 F.3d 524 (3d Cir. 2007) .............................................................23

*Brady v. Maryland*, 373 U.S. 83 (1963).........................................................................5

*Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005)..........................................................17

*Calleros v. FSI Int'l Inc.*, 892 F.Supp.2d 1163 (D. Minn. 2012) ..................................20

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..............................................................21

*Commonwealth v. DiPasquale*, 246 A.2d 430 (Pa. 1968)..............................................19

*Day v. McDonough*, 547 U.S. 198 (2006)......................................................................18

*DeAngelis v. Countrywide Home Loans, Inc. (In re Hill)*, 437 B.R. 503 (Bankr.
W.D. Pa. 2010)........................................................................................................22

*Fusari v. Steinberg*, 419 U.S. 379 (1975) .......................................2, 13, 14, 15, 16, 23

*Greenlaw v. United States*, 554 U. S. 237 (2008)..........................................................18

*Hackman v. Valley Fair*, 932 F.2d 239 (3d Cir. 1991) ..................................................21

*Imbler v. Pachtman*, 424 U.S. 409 (1976).....................................................................19

*Landon v. Hunt*, 938 F.2d 450 (3d Cir. 1991) ...............................................................21

*Level 3 Communs. LLC v. U.S.*, 724 F. App'x 931 (Fed. Cir. 2018).............................21

*Machiavelli v. Barnhart*, No. 1:12-CV-00200-DBH, 2012 WL 5389933 (D. Me.
Oct. 17, 2012), *aff'd*, No. 1:12-CV-00200-GZS, 2012 WL 5389703 (D. Me.
Nov. 5, 2012) ..........................................................................................................18

*Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995)..............................................................22

*Mattis v. Vaughn*, 128 F. Supp. 2d 249 (E.D. Pa. 2001)...............................................17

*Orie v. Sec'y Pa. Dep't of Corr.*, 940 F.3d 845 (3d Cir. 2019).....................................17

*In re Prudential*, 278 F.3d 175 (3d Cir. 2000) ...............................................................21

*Republic of Phillipines v. Westinghouse Electric Corp.*, 43 F.3d 65 (3d Cir.
    1994)...............................................................................................................................21

*Tucker v. Warren*, No. CV 13-2908 (FLW), 2016 WL 3010535 (D.N.J. May 25,
    2016)...............................................................................................................................18

*U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 540 F.
    Supp. 2d 994 (N.D. Ill. 2008) ......................................................................................20

*U.S. v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993) ........................................... 15, 23

*United States v. Williams*, No. CR 13-286, 2019 WL 2603657 (E.D. La. June 25,
    2019)...............................................................................................................................18

*In re Universal Minerals, Inc.*, 755 F.2d 309 (3d Cir. 1985) ..................................... 13, 14, 15, 16

*Venesevich v. Leonard*, 378 F. App'x 129 (3d Cir. 2010) ............................................23

*In re Williams*, 156 F.3d 86 (1st Cir. 1998)..................................................................23

*Wood v. Milyard*, 566 U.S. 463 (2012) .................................................................. 17, 18

**STATUTES**

28 U.S.C. § 1927.............................................................................................................21

28 U.S.C. § 2254.............................................................................................................17

**OTHER AUTHORITIES**

*Commonwealth v. Antonio Martinez*, CP-51-CR-0530631-1989, Order Granting
    PCRA Petition – Sentence Vacated, New Trial Ordered (Phila. Ct. Com. Pl.
    Oct. 23, 2020) ..................................................................................................................4

E.D. Pa. R. 83.6 ........................................................................................................ 12, 13

Fed. R. Civ. P. 15...........................................................................................................24

Fed. R. Civ. P. 26...........................................................................................................25

*In re: General Statewide Judicial Emergency*, Nos. 531 & 532 (Mar. 18, 2020). .........7

Model Rule of Prof'l Conduct 3.8 ...................................................................... 4, 5, 6, 20

Pa. Bar Ass'n, Op. 2012-001 .........................................................................................16

Pa. Bar Ass'n, Op. 2020-018 .........................................................................................13

Pa. R. Crim. P. 906 ..................................................................................................... 5

Pa. R. Crim. P. 907 ..................................................................................................... 7

Pa. R. Crim. P. 908 .................................................................................................... 11

Pa. R.P.C. 3.3 ............................................................................. 12, 13, 14, 15, 16, 22

Phila. Bar Ass'n, Op. 95-3 .......................................................................................... 16

v

I.    **INTRODUCTION AND SUMMARY**

Especially with the benefit of hindsight, it is easy to see why the Court would feel aggrieved at not being apprised that a parallel state post-conviction proceeding had unexpectedly been activated, the resolution of which could possibly moot a habeas corpus petition in which the Court had invested its time and efforts for the better part of a year.  The Court had scheduled a hearing on the merits that was less than three weeks away when it was informed that the state court had granted relief that in fact mooted the federal proceeding.  And yet, granting that counsel could have anticipated that the Court would expect to be informed, as a matter of courtesy, that the state court had scheduled a status conference, any discourtesy is surely mitigated by the consideration that the lawyers only learned that the state court had scheduled a status conference fifteen days before the date of the conference and without any foreknowledge that the state court would entertain let alone grant the parties' joint application for relief.  When relief was granted, the lawyers notified this Court immediately of the outcome.

Amici have every reason to believe that once the chronology of events is spelled out and documented to the Court's satisfaction, the Court will appreciate that counsel meant no disrespect to the Court and certainly did not violate any professional obligations to the Court. Even if the Court were to conclude that the lawyers owed the Court the courtesy of earlier advice, their duty of candor, which occupies a different plane, was not implicated.

Amici are deeply concerned with the detrimental effect on the bar and the practice of law of a decision in this matter that the lawyers here violated their duty of candor to a tribunal. The duty is violated when a lawyer knowingly makes false statements of material fact or law to a tribunal or fails to correct such statements upon learning that they were false.  None of the lawyers here uttered a false statement, knowingly or otherwise.  Therefore, the duty of candor defined in Pa. R.P.C. 3.3(a)(1) is not implicated. Even if that duty or an allied duty could be

1

triggered based on a failure to correct a statement of fact or law that was true at the time it was made but ceased to be true as a result of subsequent events, there can be no violation where, as here, that failure is not material to the proceedings.

Amici acknowledge the existence of a broader obligation of candor, derived from Chief Justice Burger's concurring opinion in *Fusari v. Steinberg*,[1] to inform a court of developments that may conceivably affect the outcome of a case. But the *Fusari* duty is inapplicable here for several reasons: (a) the mere activation of the state court proceedings, by itself, did not affect the outcome of the case before this Court inasmuch as a district court does not have the authority to override the prosecutor's deliberate waiver of a nonexhaustion defense; (b) amici know of no precedent for sanctioning a lawyer for a violation of the *Fusari* duty of candor on facts even remotely analogous to those here; cases where the duty has been invoked involved egregious misbehavior, such as ignoring a direct court order to brief jurisdiction, that fairly cried out for judicial reproach; and (c) to find a violation based on the failure to inform the tribunal of developments that have no effect on the Court's jurisdiction or its determination of the merits would expand the duty of candor in a way that would be perilous to lawyers and detrimental to courts.

Consequently, amici, as a group of legal scholars and practitioners, urge this court to find that counsel in this matter did not violate their ethical obligations to the tribunal. It would be bitterly ironic to find a breach of professional responsibility and a disregard for the integrity of the judicial process on the part of lawyers who, by acting to free the victim of 31 years of wrongful incarceration, were actually exemplifying the height of professional responsibility and repairing a miscarriage of justice.

---

[1] 419 U.S. 379, 391 (1975) (Burger, C.J., concurring).

## II.    STATEMENT OF INTEREST

Amici are 33 practicing litigators and law professors of deep experience. Collectively, they possess unique expertise in civil and criminal practice and procedure and in the professional responsibilities of lawyers.  They are listed with their affiliations and particularly relevant qualifications in the Appendix to this brief.[2]

This amicus brief addresses significant legal and policy issues, including the critical importance of ensuring that an attorney may be deemed to have violated his or her duty of candor to the tribunal only where the representations at issue relate to matters that are *material* to a tribunal's jurisdiction or to its truth-finding process.  As experienced litigators or scholars, amici are interested in seeing that the ethical strictures binding on lawyers are interpreted and applied in a manner that protects and preserves the integrity of the adjudicative process, gives lawyers fair notice of the conduct for which they may be sanctioned, and is sensitive to the practical implications for lawyers and courts alike of a novel and expansive interpretation of the lawyer's duty of candor to a tribunal.

Amici also have an interest in averting a lamentable outcome for lawyers who, by acting to remedy a miscarriage of justice, have fulfilled their responsibilities as "representatives of clients," "officer[s] of the legal system," and "public citizen[s] having a special responsibility for the quality of justice."[3] Amici are equally concerned lest any outcome here impair the perception of courts as guardians of justice, deter prosecutors from performing their mission as

---

[2] Amici certify that no counsel for any party authored the brief in whole or in part and that no party or its counsel contributed money that was intended to fund preparing or submitting this brief.  No person other than amici or its counsel contributed money that was intended to fund preparing or submitting this brief.

[3] Pa. R.C.P. Preamble and Scope, cmt [1].

3

ministers of justice,[4] or deter the private bar from rendering their services and zealous advocacy to persons without means.[5]

## III.    STATEMENT OF FACTS

As amici understand the context of the Court's order to show cause, Antonio Martinez was imprisoned for more than thirty years as a result of a wrongful conviction.[6] Seeking to vindicate his innocence, Mr. Martinez filed a number of post-conviction petitions in both state and federal court over a period of many years.  One such federal filing in 2017 was assigned to a member of the Philadelphia District Attorney's Office ("DAO") Federal Litigation Unit for the preparation of an answer.[7]  In digging into the police and prosecution files concerning the 1985 murder for which Martinez was arrested in 1989 and tried and convicted in 1991, the assistant district attorney uncovered troubling indications of exculpatory evidence that did not surface at trial.[8]  In keeping with the policy of the DAO to comply with the amendments to the ABA's Model Rules of Professional Conduct augmenting the special responsibilities of prosecutors with the requirement to take remedial measures upon learning post-conviction of evidence indicative of a defendant's innocence,[9] the Federal Litigation Unit referred the case to

---

[4] Pa. R.P.C. 3.8 cmt. [1]

[5] Pa. R.P.C. 6.1

[6] *See Commonwealth v. Antonio Martinez*, CP-51-CR-0530631-1989, Order Granting PCRA Petition – Sentence Vacated, New Trial Ordered (Phila. Ct. Com. Pl. Oct. 23, 2020) (docket attached hereto as Exhibit A).

[7] Answer to Pet. for Writ of Habeas Corpus (Dkt. 13) at 19.

[8] *Id.* at 19-20.

[9] *Id.* at 20 n.11. Model Rule of Professional Conduct 3.8 (Special Responsibilities of Prosecutors) was amended by the American Bar Association in 2008 with the addition of subparagraphs (g) and (h), which provide:

> (g) "When a prosecutor knows of new, credible and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall," if within the prosecutor's jurisdiction, "(i) promptly disclose that evidence to the defendant unless a court authorizes delay, and (ii) undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit."

the DAO's Conviction Integrity Unit ("CIU") in the summer of 2018.[10] As a result of its ensuing investigation, the CIU uncovered material exculpatory evidence that should have been provided to Mr. Martinez at the time of his trial.[11]  In December 2018, the CIU turned over the exculpatory evidence to Mr. Martinez who made it the basis of a *pro se* Post Conviction Relief Act ("PCRA") petition that he filed in state court on March 26, 2019.[12]  His uncounseled petition then lay dormant in state court for more than fifteen months without any court action.[13]

While his PCRA petition was pending, Mr. Martinez secured the pro bono services of experienced defense counsel (hereafter "Defense Counsel").[14]  The CIU shared its findings with Defense Counsel who conducted his own investigation into the apparent *Brady* violations.[15]  The CIU and Defense Counsel separately concluded that Martinez's conviction resulted from serious, substantial, and material *Brady* violations, and that there was no trustworthy evidence of Mr. Martinez's guilt.[16]  With the support of an order of the court of appeals granting Mr. Martinez's application to file a second or successive habeas petition, Defense Counsel filed a Petition for Writ of Habeas Corpus on behalf of Mr. Martinez in this

---

(h) "When a prosecutor knows of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall seek to remedy the conviction."

The amendments to Model Rule 3.8 are consistent with Pennsylvania prosecutors' obligations under Pa. R.P.C. 3.8(a) to "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Although many jurisdictions have adopted the amendments to Model Rule 3.8 in one form or another, Pennsylvania is not among them. By adopting as a matter of office policy a requirement that mirrors the obligations specified in the amendments, the DAO has acted in accordance with the principle that "the Rules [of Professional Conduct] do not…exhaust the moral and ethical considerations that should inform a lawyer…." Pa. R.P.C. Preamble and Scope, cmt. [15].

[10] Dkt. 13 at 20.
[11] *Id.* at 28-32.
[12] *Id.* at 21; Ex. A.
[13] Ex. A.  With no order of a judge to do so, see Pa. R. Crim. P. 906(a), the DAO did not file an answer to the PCRA petition.
[14] Dkt. 13 at 21.
[15] *Id.* at 22.
[16] *Id.* at 22.

Court in November 2019.[17]  In addition to detailing the facts demonstrating entitlement to relief

under *Brady v. Maryland*[18] and on the separate due process ground of actual innocence, the

petition addressed the fact that the claims for relief had yet to be considered or decided by the

state court.[19]  Defense Counsel represented that the Commonwealth had informed him of its

intention to waive its exhaustion defense and any other procedural default defense,

notwithstanding that Mr. Martinez had a PCRA petition pending in state court.[20]

      The Commonwealth responded to the federal habeas petition on April 6, 2020.[21]

Its Answer spelled out in detail the results of the investigation that led it to conclude that Mr.

Martinez's "trial was infected by serious prosecutorial and police misconduct, resulting in his

wrongful conviction," and that he was owed "procedural justice."[22]  To see that was

accomplished, the Answer stated, the Commonwealth was explicitly waiving "All Procedural

Defenses, Including but Not Limited to, Exhaustion."[23]  As it is unusual for the Commonwealth

to waive procedural default defenses in response to federal habeas applications, the

Commonwealth gave the Court its reasons for doing so in this instance:

> [T]he Commonwealth agrees that Martinez's rights have been violated and lacks
> confidence in his judgment [of conviction]; there is a strong likelihood that, but for the
> constitutional violations in this case he would have been acquitted. Moreover, it appears
> that this Court is better equipped to address his claims in an expedient fashion. First,
> Martinez has the benefit of *pro bono* representation in this matter, but he is uncounseled
> in his state court petition and has no right to the appointment of counsel in those
> proceedings. Second, his state petition has been assigned to a judge who is unacquainted
> with the record in this case, while this Court has the benefit of familiarity as it recently
> reviewed Martinez's first habeas petition. Given these circumstances, proceeding in
> federal court is appropriate. [FN 15]

---

[17] Dkt. 1, 3.

[18] 373 U.S. 83 (1963).

[19] Pet'r's Mem. of Law Supp. Pet. for Writ of Habeas Corpus (Dkt. 1).

[20] *Id.* at 24.

[21] Dkt. 13.

[22] *Id.* at 1-4, 27.

[23] *Id.* at 26 (section heading)

In order to facilitate a timely review (and correction) of the constitutional errors in this case, *the Commonwealth will not assert and affirmatively waives any and all non-jurisdictional procedural bars that would otherwise prevent this Court from considering the merits of Martinez's claims or issuing appropriate relief.* [emphasis added]

> [FN 15] The Commonwealth also notes that, given the current COVID-19 pandemic, the state courts have essentially closed. *See In re: General Statewide Judicial Emergency*, Nos. 531 & 532 Judicial Administration Docket (Mar. 18, 2020). It is unknown when they will resume normal operations.[24]

Within weeks of receiving the Commonwealth's Answer, this Court conducted three conferences on Mr. Martinez's motion for bail and a June status conference.[25] On July 2, 2020, the state court issued a notice to Mr. Martinez under Pa. R. Crim. P. 907 of its intention to dismiss his PCRA petition subject to a response that he had 20 days to submit.[26] On July 15, Mr. Martinez filed a *pro se* opposition to the Notice of Dismissal.[27] In August and September, this Court conducted two status conferences and considered filings by the parties regarding supplemental evidence and the Court's desire to hear testimony from the trial prosecutor in Mr. Martinez's case.[28]

Without either dismissing Mr. Martinez's PCRA petition, granting leave to amend, or formally directing that the proceedings continue—the options contemplated by Pa. R. Crim. P. 907(1) following the issuance of a notice of intent to dismiss—the state court on September 25, in the person of Judge Brandeis-Roman, listed the case for status on October 23, 2020, and also appointed counsel for Mr. Martinez.[29] As Defense Counsel was not counsel of record in state court, he did not receive notice of the listing from the court.[30] The CIU lawyers representing the Commonwealth in this federal proceeding did not learn of the listing until

---

[24] *Id.* at 27.
[25] Dkt. 16, 18, 20-23, 26.
[26] Ex. A.
[27] *Id.*
[28] Dkt. 29, 30-32.
[29] Ex. A.
[30] Response of Petitioner's Counsel to Order to Show Cause (Jan. 8, 2021) at 9.

7

October 8.[31]  Before either the CIU or Defense Counsel was aware of the listing for status in the state proceeding, this Court entered an order on October 1, 2020, scheduling an evidentiary hearing on the federal habeas petition for November 10 and directing the Commonwealth to subpoena the trial prosecutor for the hearing.[32]

Upon learning of the listing for status in state court, Defense Counsel entered his appearance for Mr. Martinez on his PCRA petition on October 14 and then filed an amended PCRA petition on October 17 that essentially tracked the habeas application before this Court.[33] Also on October 17, the Commonwealth filed papers that joined in the request for relief, again for the reason of according justice to a defendant long imprisoned on an unconstitutional conviction and despite his probable innocence.[34]  Six days later, on October 23, counsel appeared via Zoom for the status conference before Judge Brandeis-Roman.[35]  After hearing from counsel, and with full awareness of the pending federal proceeding, Judge Brandeis-Roman granted Mr. Martinez the relief requested in his unopposed PCRA petition and vacated his conviction and sentence.[36] On the same day, the parties filed in this Court a joint stipulation of dismissal, the habeas application having been rendered moot by the state court's award of post-conviction relief.[37]

On November 4, this Court conducted a teleconference with counsel at which Defense Counsel apologized to the Court for the discourtesy of not informing the Court sooner of the developments in state court.[38] The conference was followed by the Court's show-cause

---

[31] Response of Commonwealth to this Court's Order to Show Cause (Jan. 8, 2021) at 3.
[32] Dkt. 33.
[33] Ex. A (Counseled Supplemental Petition for Post-Conviction Relief (Oct. 17, 2020)).
[34] Ex. A; Dkt. 38 ¶¶ 5-6.
[35] Ex. A.
[36] Ex. A; Dkt. 38 ¶ 7.
[37] Dkt. 38.
[38] Dkt. 50.

order of December 1.[39]  The order directs the CIU and Defense Counsel to disclose the dates on

which they became aware of facts "undermining, modifying, or otherwise amending the

Philadelphia DAO's stated reasons for waiver of state court exhaustion" and to show cause why

their conduct, as detailed in the Order, "did not violate Pennsylvania Rule of Professional

Conduct 3.3(a)(1) . . . and/or counsel's continuing duty to advise the court of any material

developments that could have affected the outcome of the litigation before [the court]."[40]

        In between October 8 and October 23, the docketed activity in this proceeding

consisted of the Commonwealth's October 22 motion requesting clarification of the terms of the

subpoena that it had been ordered to serve upon the trial prosecutor and the Court's order of the

next day denying the motion without opinion.[41]

## IV.    ARGUMENT

### A.    Counsel Did Not Violate the Duty of Candor to a Tribunal

        1.      *Counsel's duty of candor is not implicated based on the timing of*
*counsel's knowledge of new events and counsel's disclosures to the court.*

        This Court has placed at issue whether the supervisor of the DAO's Conviction

Integrity Unit and a defense lawyer acting in a pro bono capacity violated their duty of candor to

the tribunal.  They are threatened with sanctions unless they can show that before October 23,

2020, they were not in possession of facts "undermining, modifying, or otherwise amending the

Philadelphia DAO's stated reasons for waiver of state court exhaustion."[42]

        By its show-cause order, the Court has asked to be told "what did the lawyers

know (that the Court did not know), and when did they know it?" The answer appears to be that

not until October 8 did any of the lawyers learn that the state court had scheduled a status

---

[39] Dkt. 52.
[40] *Id.* at 1, 2.
[41] Dkt. 36, 37.
[42] Dkt. 52 at 2.

9

conference on the Martinez PCRA petition for October 23.[43]  Beyond that, within the next ten days, Defense Counsel entered his appearance in state court and the parties filed papers in the state court requesting relief on grounds that they had previously detailed and documented in this Court.[44]  Those three developments—the scheduling of a status conference, Defense Counsel's appearance for Mr. Martinez on his PCRA petition, and the submission of papers jointly supporting the PCRA petition—did not contradict any of the facts presented on April 6, which remained literally true as a description of the circumstances that existed on April 6, 2020.

Judges may very well wish and expect to be informed, at the earliest opportunity, of developments in a proceeding that parallels one that they are conducting. Counsel would have done well, in retrospect, to have advised the Court of the developments in the parallel state court proceedings as they were occurring, as they were developments of potential interest to the Court irrespective of their materiality.  But a lapse of courtesy does not equate to professional misconduct let alone justify the imposition of sanctions.  And it surely matters here that only fifteen days elapsed between when the lawyers learned of the facts pertaining to the CIU's stated reasons for waiving its exhaustion defense and when the Court was informed of the state court action.

Even more significantly for purposes of assessing the lawyers' compliance with their duty of candor to the tribunal, the new developments did not alter the CIU's waiver decision or upset the legal or jurisdictional underpinnings of the habeas application.  Finally, the Court was notified as soon as there was a substantive development in the state proceeding and before the Court was scheduled to hold its own hearing on the merits.

---

[43] Response of Commonwealth to this Court's Order to Show Cause (Jan. 8, 2021) at 3.
[44] Ex. A.

Up until the moment on October 23 that the state court granted relief, the lawyers were bound to assume that they would be appearing before this Court for a hearing on November 10.[45]  Indeed, it stands to reason that if the CIU had any different assumption, it would not have wasted its time or the Court's in moving on October 22 for clarification of the terms of a witness subpoena ordered by the Court in connection with the November 10 hearing.[46]  It is also relevant in judging the state of mind of the lawyers that the state court did not order a bring-down for Mr. Martinez and no other arrangement was made for his appearance at the status conference, which is mandatory at a hearing on the merits of a PCRA petition.[47]

With the benefit of the information requested of the lawyers, and that has now been presented by the lawyers and reiterated here, amici anticipate that the Court will appreciate that the lawyers did not withhold information from the Court for a period of time or under circumstances that were in any way prejudicial to this Court's administration of justice.  The lawyers had an avenue to relief open up unexpectedly that they could not fail to pursue as a matter of professional responsibility, to a client in the case of Defense Counsel, as ministers of justice in the case of the CIU.  Far from impairing the administration of justice, the lawyers succeeded in having justice done with the incidental benefits of having it rendered by a state court in furtherance of the interest of comity and relieving this Court's docket.

If the Court is unconvinced by the chronology of events that a finding of professional misconduct would be inappropriate under the circumstances, amici offer their analysis of the pertinent authorities as they bear on whether the lawyers fell short of meeting their obligation of candor to the Court.

---

[45] Dkt. 33.

[46] Dkt. 36

[47] Response of Commonwealth to this Court's Order to Show Cause (Jan. 8, 2021) at 17 n.11; *see also* Pa. R. Crim. P. 908(C) ("The judge shall permit the defendant to appear in person at the hearing[.]")

2. *Counsel neither failed to correct a material false statement nor failed to notify the court of a development that could conceivably affect the matter's outcome.*

The duty of candor to a tribunal is laid down in Pa. R.P.C. 3.3(a)(1), which provides that attorneys may not "knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."[48]  As an initial matter, there is no contention, as amici read the show-cause order, that the lawyers knowingly made any false statement of material fact or law or failed to correct a statement that was false when made in violation of Rule 3.3(a)(1).  The Commonwealth's representations to the Court in its April 6 Answer accurately described the circumstances as of the filing of the Answer that underlay the decision to waive the Commonwealth's exhaustion defense.  Those circumstances included that Mr. Martinez had a pending PCRA petition, the petition was uncounseled, it had not been assigned to a judge with knowledge of the case, and, incidentally, the state court was effectively shut down as a COVID-19 health and safety measure.[49]

Having investigated and concluded that justice had been denied to Mr. Martinez and that he was entitled to have his wrongful conviction remedied, the Commonwealth made the judgment that in light of the circumstances then existing in state court, the federal court was "better equipped" to render the timely justice owed to Mr. Martinez. Accordingly, the Commonwealth expressly waived its nonexhaustion defense.[50]

At no time after April 6 when the Commonwealth filed its answer to the federal petition and affirmatively waived its nonexhaustion defense did any facts come to light that

---

[48] Pa. R.P.C. 3.3(a)(1). This court has adopted Pennsylvania's Rules of Professional Conduct ("the Pennsylvania Rules"). E.D. Pa. R. 83.6(IV)(B).
[49] Dkt. 13 at 27.
[50] *Id.*

12

belied the description of the circumstances that existed at the time the defense was waived. Therefore, this is not a case in which statements of material fact or law believed to be true when made later turned out to have been false at the time they were uttered, giving rise to a duty of correction under Rule 3.3(a)(1).  Instead, the attorneys learned in mid-October that some of the circumstances underlying the Commonwealth's decision to waive its exhaustion defense had changed.  If and to the extent that Rule 3.3 requires attorneys to correct statements that were accurate when made but are no longer accurate because of changed circumstances,[51] that duty is still only triggered where the changed fact or law is *material* within the meaning of Rule 3.3.[52] As discussed in more detail at pp. 16-21 below, nothing that the lawyers learned or did after October 8 touching the state court proceedings was or could have been material to this Court's decision-making until the state court granted the Martinez PCRA petition and dismissed the charges against him. Therefore, counsel could not have violated Rule 3.3.

Separate and apart from Rule 3.3, the Third Circuit in *Universal Minerals*, quoting a concurring opinion by Chief Justice Burger in *Fusari*, has said, in dictum, that a lawyer has a "continuing duty to inform the Court of any development which may conceivably affect an outcome."[53]  The "continuing duty" announced in *Universal Minerals* differs from the duty laid down in Rule 3.3(a) in that it does not depend on the utterance, knowingly or otherwise, of a false statement of material fact or law but concerns only "developments" of which a court should be apprised.  In common, however, with the duty of candor defined in Rule 3.3(a), the continuing

---

[51] While not expressly required by the text of the rule, there is some support for the contention that Rule 3.3 includes a duty to correct material statements of fact or law that were true at the time but later changed. *See, e.g.*, Pa. Bar Ass'n, Op. 2020-018 (opining that an attorney in a termination of parental rights proceeding was required to correct a prior pleading that stated that the biological mother and step-father resided together and were in a stable relationship when the attorney learned that the couple later separated and planned to divorce).

[52] Pa. R.P.C. 3.3(a)(1) (lawyer's duty pertains to a "false statement of material fact or law").

[53] *In re Universal Minerals, Inc.*, 755 F.2d 309, 313 (3d Cir. 1985) (citing *Fusari*, 419 U.S. at 391 (Burger, C.J., concurring)).

13

duty of *Universal Minerals* is limited by the requirement of materiality. That is, a lawyer has a continuing duty to inform a court only of those developments that "may conceivably affect an outcome."

*Fusari* and *Universal Minerals* both arose from extreme facts. Neither case supports finding a violation of *any* duty of candor in this matter. In *Fusari*, the lawyers failed adequately to notify the United States Supreme Court that, in the aftermath of the three-judge district court decision on appeal, the legislature had amended and reformed the Connecticut statutory procedures for determining unemployment compensation eligibility that allegedly failed to satisfy the minimal requirements of due process. Because the Supreme Court "reviews the District Court's judgment in light of presently existing Connecticut law, not the law in effect at the time that judgment was rendered, [citations omitted]," a unanimous Court determined that it could not "meaningfully assess the issues in this appeal on the present record" and remanded the case to the district court for consideration of the amended statute.[54] Although Justice Powell's opinion for the Court expressed dismay over the "failure of counsel fully to inform the Court of [the] amendments to Connecticut law,"[55] Chief Justice Burger was alone in adverting in his concurring opinion to counsel's "continuing duty to inform the Court of any development which may conceivably affect an outcome," which he linked to the Court's reliance on counsel "to present issues fully and fairly." Notably, the Chief Justice did not suggest that counsel's failure adequately to bring the statutory amendment to the Court's attention warranted professional discipline.

In *Universal Minerals*, counsel for appellant failed to respond to the appellee's challenge to the court's jurisdiction and then blatantly ignored the court's specific direction to do

---

[54] *Fusari*, 419 U.S. at 390-391.
[55] *Id.* at 387 n.12

14

so.[56] The court of appeals dismissed the appeal both for lack of jurisdiction and as a sanction for the willful refusal of appellant's counsel to comply with the court's explicit order.[57] In *Universal Minerals* as in *Fusari,* the court did not impose sanctions against a lawyer personally for professional misconduct. Dismissal of an action or an appeal is, of course, a prescribed sanction and customary consequence for non-compliance with a legal or procedural obligation even though the party's lawyer may be at fault as, for example, when there is a failure to file suit within the statute of limitations or a failure to respond to discovery in defiance of a court order. Thus, *Universal Minerals* is less a discipline-for-professional-misconduct case than it is a case about the sanctions that lie for a party's violation of procedural rules and court orders.[58]

As stated above, the duty of candor in Rule 3.3, as well as the continuing duty to inform a tribunal of new developments as described in *Universal Minerals* and *Fusari*, are limited to statements of fact or law that are *material*.[59] If the statement of fact or law is not material, than there is no duty to disclose it. For Rule 3.3, a "statement is 'material' if, under the facts of the particular case, it would affect a tribunal's decision-making or if it [is] significant or essential."[60] As explained in comment 2 to Pa. R.P.C. 3.3, the purpose of the rule is to "avoid conduct that undermines the integrity of the adjudicative process." As such, materiality is

---

[56] *In re Universal Minerals*, 755 F.2d at 311.

[57] *Id.*

[58] It may even be wondered why Chief Justice Burger in *Fusari* and the court of appeals in *Universal Minerals* thought it necessary to carve out a new duty of candor. In each case, the lawyers failed to inform the tribunal of legal developments or legal authority that went to the tribunal's jurisdiction over an appeal, omissions at least arguably transgressing Rule 3.3(a)(1) and/or (a)(2).

[59] *See* Pa. R.P.C. 3.3(a)(1) ("false statement of material fact or law"); *In re Universal Minerals,* 755 F.2d at 313 (citing *Fusari*, 419 U.S. at 391 (Burger, C.J., concurring) (developments that may "conceivably affect an outcome of the litigation"). Additionally, while courts have recognized a "broader general duty of candor and good faith required to protect the integrity of the entire judicial process," that duty is similarly limited to a "lack of candor in any material respect" related to "matters material to the disposition." *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 457-458 (4th Cir. 1993).

[60] Pa. Bar Ass'n, Op. 2012-001 (citing ABA/BNA Lawyers' Manual on Professional Conduct).

assessed "with regard to the merits of the proceeding."[61] Similarly, in *Universal Minerals/Fusari*, the "continuing duty to inform" the court is limited to developments "which may conceivably affect an outcome."[62]  Therefore, to be material, the development must at least be capable of affecting the truth-finding or adjudicative process.

Here, amici are unable to discern any development that was material to this Court's adjudicative process until the state court granted relief.  At that point, counsel immediately notified the court of the state court's action that had the effect of mooting the petition for a writ of habeas corpus.

Between April 6 and October 23, the activity in state court consisted of the following events:

- On July 2, the state court entered an order stating its intent to dismiss Mr. Martinez's *pro se* PCRA petition;

- On July 15, Mr. Martinez filed an objection to the dismissal;

- On September 25, Judge Brandeis-Roman continued the matter for the appointment of counsel and listed the case for a status conference on October 23;

- On September 28, an attorney other than Defense Counsel entered his appearance as counsel for Mr. Martinez;

- On October 14, Defense Counsel in this matter entered his appearance for Mr. Martinez;

- On October 17, counsel for the parties filed papers documenting Mr. Martinez's entitlement to relief based on the Brady violations previously presented to this court; and

- On October 23, Judge Brandeis-Roman held a status conference (via Zoom) and granted Mr. Martinez's unopposed petition for post-conviction relief, unexpectedly vacated his sentence, and granted a motion for *nolle*

---

[61] Phila. Bar Ass'n, Op. 95-3 (July 1995) ("Where a client has intentionally given false testimony, a lawyer must determine whether the testimony may be material in any respect with regard to the merits of the proceeding. If [the lawyer] is satisfied that the evidence is not material, the duties under Rule 3.3(a)(2) do not apply.").

[62] *In re Universal Minerals,* 755 F.2d at 313 (citing *Fusari*, 419 U.S. at 391 (Burger, C.J., concurring)).

16

*prosequi* ending Mr. Martinez's ordeal of 31 years of wrongful incarceration.[63]

None of the developments in state court that the lawyers learned of or were responsible for on or after October 8 up and until the unexpected granting of relief on October 23 "undermined, modified, or amended" in any way the Commonwealth's waiver of its exhaustion defense, nor did they apparently disturb the Commonwealth's belief that the federal court was "better equipped" to provide for timely review and correction of the wrongful conviction of Mr. Martinez.  That being so, there was nothing to correct, no material development to report.

The failure of a habeas applicant to have exhausted state remedies does not affect the district court's jurisdiction.[64]  Instead, the failure to exhaust state remedies is an affirmative defense that the prosecutor may choose to waive.[65]  If the defense is waived deliberately, a district court is without authority to go behind the waiver.[66]  As the Supreme Court stated in *Wood v. Milyard*, a "court is not at liberty . . . to bypass, override, or excuse a State's deliberate waiver" of affirmative defenses.[67]  And although *Wood v. Milyard* involved the deliberate waiver of a limitations defense, the language and reasoning of the Court's opinion make it equally applicable to the express, deliberate waiver of any procedural default defense.[68]  For example,

---

[63] Ex. A.

[64] *Mattis v. Vaughn*, 128 F. Supp. 2d 249, 257 (E.D. Pa. 2001) ("The exhaustion requirement is a rule of comity, not jurisdiction.").

[65] *See Orie v. Sec'y Pa. Dep't of Corr.*, 940 F.3d 845, 854 (3d Cir. 2019) ("[A] state can waive exhaustion if it does so explicitly through counsel. [28 U.S.C.] § 2254(b)(3).  That waiver is valid even when lack of exhaustion would otherwise have barred the petitioner's claim."); *see also Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) ("Without an express waiver by the state, a federal court is allowed under 28 U.S.C. § 2254(b)(1)(A) to grant a state prisoner's habeas petition only if the petitioner has exhausted all available state remedies.").

[66] *Wood v. Milyard*, 566 U.S. 463, 466 (2012).

[67] *Id.*

[68] Additionally, several district courts have applied the holding of *Wood v. Milyard* to exhaustion and procedural default affirmative defenses in habeas matters. See *United States v. Williams*, No. CR 13-286, 2019 WL 2603657, at *3 (E.D. La. June 25, 2019) (citing *Wood*, 566 U.S. at 472-473) ("When the government waives [timeliness and exhaustion] defenses, the Court should proceed to consider petitioner's argument on the merits."); *Machiavelli v. Barnhart*, No. 1:12-CV-00200-DBH, 2012 WL 5389933, at *3 (D. Me. Oct. 17, 2012), *aff'd*, No. 1:12-CV-00200-GZS, 2012 WL 5389703 (D. Me. Nov. 5, 2012) (noting that the Supreme Court in *Wood v. Milyard* held "it would be an abuse of discretion for a court 'to override a State's deliberate waiver of a limitations defense,'"

the Court noted that "a federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system."[69]  Crucially, the Court concluded that "[o]nly where the State does not 'strategically withh[o]ld the defense or cho[o]se to relinquish it,'… may a district court consider the defense on its own initiative."[70]  Where, as in this case, the state's waiver of its exhaustion defense was a result of its "deliberate decision to proceed straightaway to the merits," and was not the product of inadvertence, the waiver is not subject to reevaluation by the court.[71]  Because it was not within the Court's province to override the Commonwealth's deliberate decision to waive its exhaustion defense, the subsidiary facts and reasoning underlying the waiver decision had no bearing on any decision the Court could make in the habeas proceeding.  The Court could not refuse to exercise its jurisdiction on account of the state court activities, and those activities had no relevance to the merits of the habeas petition.

Additionally, appearing for a status conference in state court and asking the state court to grant relief was not inconsistent with the Commonwealth's waiver of the exhaustion defense, as the waiver was expressly predicated on obtaining speedy relief to undo injustice.  If that end could be obtained in state court, both the ends of justice and the comity interest of the exhaustion requirement would be served.  Conversely, if the Commonwealth had any reason to believe, which it evidently did not, that there had been a change in circumstances that warranted amending its answer to assert an exhaustion defense, the prosecutors could have sought leave to amend, which they did not. Instead, the Commonwealth evidenced its adherence to its waiver of procedural defenses by filing a motion for clarification before this court on October 22.[72]

---

and "equat[ed] the affirmative defenses of limitations and exhaustion for purposes of forfeiture or waiver of either defense"); *Tucker v. Warren*, No. CV 13-2908 (FLW), 2016 WL 3010535, at *9 (D.N.J. May 25, 2016) (noting that "[c]ourts raise procedural default sua sponte where the respondent has not expressly waived the defense").

[69] *Wood*, 566 U.S. at 472 (citing *Greenlaw v. United States*, 554 U.S. 237, 243-244 (2008)).

[70] *Id.* at 472 (citing *Day v. McDonough*, 547 U.S. 198, 210-211 (2006)).

[71] *Id.* at 473 (citing *Day*, 547 U.S. at 202).

[72] Mot. for Clarification of Court's Oct. 1, 2020 Order (Dkt. 36).

It would be doubly inappropriate to reevaluate or attempt to upset the express waiver of the exhaustion defense in a case where the defense was waived by the prosecutors in carrying out their duty to vacate the conviction of a wrongfully-convicted person. Where a prosecutor determines that a conviction or sentence does not serve the interests of justice, the prosecutor is not only permitted, but indeed has a duty to reverse course.[73] The prosecutors' ethical obligations—attributable to an individual prosecutor, fellow prosecutors, or the office itself—do not evaporate upon the defendant's conviction. Rather, "after a conviction the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction."[74] The District Attorney's Answer to the Writ of Habeas Corpus invoked the DAO's recognition, as a matter of office policy, of a post-conviction duty to rectify a conviction upon learning of information that cast substantial doubt on the defendant's guilt. While Pennsylvania has so far declined to adopt the ABA Model Rule amendments that articulate a prosecutor's post-conviction duty to investigate substantial wrongful conviction claims and to remedy those determined to be meritorious, those amendments stand nevertheless as guides to a prosecutor's ethical conduct and were honored by the prosecutors in this case.

A final consideration in judging the materiality of the developments in state court of which the Court was only belatedly informed, counsel notified this Court of the state court's decision before the Court expended its time and resources in a hearing or made any decision on the merits. In this regard, this case is distinguishable from *Calleros*, a case cited in the show-cause order for the proposition that counsel has an obligation to disclose collateral proceedings.[75]

---

[73] *See, e.g.*, *Commonwealth v. DiPasquale*, 246 A.2d 430, 432 (Pa. 1968) (holding that a District Attorney "has a [g]eneral and widely recognized power" to decide "whether and when to continue or discontinue a case").

[74] *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).

[75] Dkt. 52 at 9 (citing *Calleros v. FSI Int'l Inc.*, 892 F.Supp.2d 1163, 1168 n.6 (D. Minn. 2012)).

19

In *Calleros*, unlike here, counsel did not make "*any* reference to the state-court cases raising nearly identical issues" while requesting an injunction.[76]  Here, the parties notified the court of the pending state petition in the petition for writ of habeas corpus by which the proceeding was commenced, again in April 2020 by way of the Commonwealth's answer to the petition, and then again on October 23, 2020, before the Court conducted its own hearing on the merits.[77]

The other cases cited in the show-cause order are similarly distinguishable because, unlike here, (1) the developments of which the court was not informed were material to the proceedings, and (2) counsel *never* corrected the material factual error or disclosed the material development, or only did so after the failure was discovered by opposing counsel. Amici defer to the parties' discussions in their respective briefs for a detailed recital of the factual distinctions.  So far as amici are aware, there is no case law in which a lawyer was found to have violated the duty of candor to a tribunal on facts that are even faintly analogous to the facts of this matter..

B.      **Sanctions Are Not Appropriate**

Even if the Court were to conclude that counsel breached their duty of candor, it should refrain from imposing sanctions in the absence of any indicia of dishonesty, fraud, bad faith or otherwise iniquitous conduct on the part of the lawyers. Indeed, without such indicia, it would be an inappropriate exercise of the Court's authority to discipline a lawyer.

---

[76] 892 F.Supp.2d at 1167 (emphasis in original).

[77] The court also cited to *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.* regarding the duty to inform the court of collateral proceedings.  Dkt. 52 at 10 (citing 540 F. Supp. 2d 994, 997 n.1 (N.D. Ill. 2008)). In *Lake Shore*, the court found that an attorney made serial filings and reasserted previously-rejected arguments, despite repeated warnings from the court, and demonstrated a lack of candor because he did not inform the court of a controlling authority.  540 F. Supp. 2d at 1013, 1015, 1017.  Regarding the existence of other proceedings, the court noted in a footnote that "[i]t is unclear why none of the lawyers" disclosed a related administrative proceeding to freeze assets. *Id.* at 997 n.1. Though the court cited to case law regarding the "duty to inform," the court did not make a finding that the attorneys' failure was a violation of that duty. *Id.* Further, the court did not find the other attorneys in violation of an ethical obligation, and ultimately did not sanction the attorney who was the subject of the court's show cause order. *Id.* at 1018.

20

Sanctions issued pursuant to the court's "inherent powers must be exercised with restraint and caution."[78]  In the absence of a finding of "fraud or bad faith, whereby the 'very temple of justice has been defiled,' a court enjoys no discretion to employ inherent powers to impose sanctions."[79]  Similarly, courts in this circuit have held generally that a finding of "bad faith" is required before a court can impose sanctions pursuant to the court's inherent authority.[80]  At the very least, sanctions are not justified for conduct that is "merely inadvertent or even negligent."[81]  Instead, sanctions imposed pursuant to the court's inherent power are reserved for conduct that is "egregious."[82]

In this case, counsel for the Commonwealth and for Mr. Martinez informed the Court that state court proceedings were pending at the outset of this habeas petition, and notified the court of the substantive results of those proceedings immediately and before this court conducted its own hearing on the merits.  As there was no hearing on the merits in federal court, the proceedings were not "multiplied"[83] and, in the end, the principles of comity were vindicated by the state court's action.  Counsel did not act in bad faith and if their conduct fell short of an ethical norm, it can hardly be characterized as egregious.

---

[78] *In re Prudential*, 278 F.3d 175, 189 (3d Cir. 2000) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). It appears that any sanctions contemplated in this matter would be issued pursuant to the court's inherent authority. However, for sanctions issued pursuant to 28 U.S.C. § 1927, "willful bad faith" is also a prerequisite. *Id.* at 181 (citing *Hackman v. Valley Fair*, 932 F.2d 239 (3d Cir. 1991)).

[79] *Level 3 Communs. LLC v. U.S.*, 724 F. App'x 931 (Fed. Cir. 2018) (internal citations omitted) (non-precedential).

[80] *See In re Prudential*, 278 F.3d at 181 ("[A]n award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith."); *Landon v. Hunt*, 938 F.2d 450 (3d Cir. 1991) (finding of bad faith required to impose sanctions pursuant to inherent authority); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 495 (E.D. Pa. Mar. 24, 2020) ("a prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct."); *but see Republic of Phillippines v. Westinghouse Electric Corp.*, 43 F.3d 65 (3d Cir. 1994) (bad faith is not always required to impose sanctions).

[81] *DeAngelis v. Countrywide Home Loans, Inc. (In re Hill)*, 437 B.R. 503, 523 (Bankr. W.D. Pa. 2010).

[82] *See Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995).

[83] *See Artesian Water Co. v. Chester Water Auth.*, No. CIV.A. 10-7453, 2014 WL 4851498, at *21 (E.D. Pa. Sept. 30, 2014) (declining to impose sanctions for Rule 3.3 violation where the "misstatement did not multiply the proceedings in this case.").

21

### C.    The "Continuing Duty to Inform the Court" Should Be Narrowly Construed

Amici acknowledge precedent establishing a continuing duty to apprise a court of material developments.  Yet, the construct that lawyers have a duty to inform courts of developments that "may conceivably affect an outcome" is too broad to serve as a working definition of a professional obligation. In the course of every proceeding, there are myriad developments that "may conceivably affect an outcome," but that do not go to the integrity of the adjudicative process.  Surely Chief Justice Burger had in mind factual or legal developments touching jurisdiction or the merits when he referred to the responsibility of lawyers to assist the Court in deciding issues "fully and fairly."[84]  Developments that meet that standard, that is, that are necessary to a full and fair determination of the issues to be decided by the tribunal, are those that a court is entitled to be apprised of to safeguard the integrity of the truth-finding process.

The burden placed on lawyers and courts by a vaguely defined duty of candor would be untenable to say nothing of the cost to the body of ethical rules.  Because an attorney's ethical responsibilities to a client can be trumped by the duty of candor to the court, the duty of candor needs to be interpreted so as not to eviscerate, for example, the lawyer's responsibility as an advocate and the duty of confidentiality owed to a client.  The necessary balance among ethical obligations is achieved by being mindful of the precise purpose of the duty of candor, namely, to "guard against the corruption that justice will be dispensed on an act of deceit" and to "preserv[e] the integrity of the judicial system."[85]  Therefore, "the continuing duty to inform the court" should be applied narrowly to circumstances in which counsel's failure would amount to an "act of deceit" or pervert "the integrity of the judicial system."[86]

---

[84] *See Fusari*, 419 U.S. at 391.
[85] *Shaffer*, 11 F.3d at 458.
[86] *See id.*

22

This limitation is particularly important where a court considers whether to find that an attorney has violated his ethical obligations.  Such a finding has grave consequences for an attorney's reputation and well-being, separate and apart from any formal censure or other sanctions imposed by the court.  Indeed, the Third Circuit has recognized that "an order rising to the level of a public reprimand" of an attorney is in itself an appealable sanction.[87]

Even where circumstances change such that a once-true statement made to the court is no longer true, the duty to update the court is not automatically triggered.  Some commonplace examples that occur during the regular course of litigation include:

- Lawyer advises a federal judge that she is attached for trial in a state court case in the week that the federal judge has ordered that the federal case is to be tried. In reliance on the lawyer's representation, the federal judge reschedules his trial. Unexpectedly, the state court schedules a settlement conference at the request of the lawyer's opponent whose client, he reveals, has lowered his settlement demands, making settlement attainable. Lawyer does not inform the federal court of the settlement conference in the state case. At the settlement conference, the case settles, well before the scheduled trial date. Has the lawyer violated her duty of candor by not informing the federal court of the state court settlement conference and the attendant possibility that the scheduling conflict will be resolved?

- Lawyer files a complaint which is subject to a pending motion to dismiss. On the first day of the 21-day period provided for by Federal Rule of Civil Procedure 15(a)(1)(B), within which he can file an amended pleading as a matter of right, he decides to do so and begins drafting the amendment. He files the amended complaint on the last day of the applicable period. Does the lawyer violate the duty of candor if he does not notify the court of the decision to submit an amended complaint making the pending motion moot?

- Lawyers for both parties inform the court that they do not think settlement is likely. Pre-trial discovery and motions ensue, including the court's consideration of motions. During the course of litigation, the parties begin to discuss potential settlement and they are eventually able to settle the matter two weeks prior to trial. Lawyers for the parties inform the court that they have settled the matter and trial will not be necessary. Did the lawyers breach their duty of candor by not informing the court that settlement discussions had begun but before any settlement actually occurred?

---

[87] *See Venesevich v. Leonard*, 378 F. App'x 129, 130 (3d Cir. 2010) (citing *Bowers v. NCAA*, 475 F.3d 524, 543 (3d Cir. 2007)); *see also In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998) ("It is trite, but true, that a lawyer's professional reputation is his stock in trade, and blemishes may prove harmful in a myriad of ways.").

- Criminal cases are rife with analogous situations in which a prosecutor and defense counsel embark on plea negotiations while the court is busily engaged in considering and ruling upon multiple pretrial motions. If only because the negotiations may come to naught, no one to our knowledge has ever suggested that the lawyers must notify the court that they are talking to one another. If and when agreement is reached that moots the pretrial motions and trial, timely notice to the court is called-for. Before that point, the lawyers are not in default of their obligation to "present issues fully and fairly," to use the words of Chief Justice Burger in positing a continuing duty to inform a court of developments.

These examples can be multiplied endlessly in a universe in which a development that "may conceivably affect an outcome" must be reported to a court on penalty of sanctions. Suppose a lawyer learns of a witness or possible witness to the accident giving rise to the lawsuit. As the witness could be in possession of information that "may conceivably affect the outcome" of the matter, is the lawyer duty-bound to inform the court of the witness's existence?[88] Or what is the lawyer's obligation on learning of a judicial opinion in another jurisdiction that contains dicta that could conceivably influence the court's determination of the law that applies to the controversy in which the lawyer represents a client whose interests clash with the dicta?

Amici respectfully ask the Court to avoid any interpretation of the duty of candor that would result in lawyers having a duty to report information that is not directly material to the case at issue, is unnecessary to safeguard the integrity of the truth-finding process, and is at odds with the lawyer's duty as an advocate for a client in an adversary system of justice. Lawyers should not be induced, through fear of ethical sanction, to flood courts with useless information. And yet, it would require an immoderately broad interpretation of the duty of candor to find that the duty had been violated in this case by not informing the court that a state court avenue to relief had opened up. This order to show cause is best resolved in a way that spares the lawyers

---

[88] *Cf.* Fed. R. Civ. P. 26 (a)(1) requiring initial disclosure of individuals "*likely* to have discoverable information" that pertains to claims or defenses. (emphasis added)

24

an unjust punishment for conduct that lies outside the purview of the Rules of Professional

Conduct and avoid the deleterious impact on the practice of law and on the relations between

lawyers and judges that sanctions would portend.

## V.    <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, it is respectfully submitted that the Court

should vacate the order to show cause.

Dated: January 8, 2021                          Respectfully submitted,

<u>/s/ David Richman</u>
David Richman (PA 4179)
Hope A. Comisky (PA 26357)
Christen M. Tuttle (PA 206925)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799

*Counsel for Amici Curiae*

## APPENDIX: AMICI SIGNATORIES

1) **Rachel Barkow** is the Vice Dean and Charles Seligson Professor of Law as well as the faculty director of the Center on the Administration of Criminal Law at New York University School of Law, where she has been teaching criminal law for two decades. Her research and scholarship also focus on criminal law, and she has a particular interest in prosecutorial practices.

2) **Mira Baylson** is a shareholder at the firm of Cozen O'Connor. She is a member of the American Law Institute. She has practiced as a litigator in the state and federal courts of Pennsylvania for 10 years, served as a trial attorney at the Defenders Association of Philadelphia, and currently sits on the boards of the Public Interest Law Center and the Pennsylvania Innocence Project.

3) **James M. Becker** is Of Counsel at the firm of Buchanan Ingersoll & Rooney, P.C. He was previously a shareholder there for 10 years, and a partner at the firm formerly known as Saul Ewing LLP for over 27 years. Prior to private practice, Mr. Becker worked in the United States Department of Justice for 8 years, including 6 in the United States Attorney's Office for the Eastern District of Pennsylvania, where he served as an Assistant United States Attorney and as Chief of the Major Crimes Section. For 6 years, Mr. Becker served as a Hearing Committee member for the Pennsylvania Disciplinary Board. He is a former Chair of the Federal Criminal Law Committee for the Eastern District of Pennsylvania and a former member of the Practitioner's Advisory Group to the United States Sentencing Commission.

4) **David Berardinelli** is a partner at the law firm of DeForest Koscelnik Yokitis and Berardinelli. David's practice focuses on federal criminal defense, with an emphasis on white collar crime. David is ranked in Chambers USA for White Collar Crime, has been twice named as Pittsburgh's Lawyer of the Year for White Collar Crime by Best Lawyers, has been recognized by Super Lawyers for nearly a decade and has an AV Preeminent rating by Martindale-Hubbel. David is a member of the Academy of Trial Lawyers of Allegheny County. He co-chairs the Allegheny County Bar Association Federal Court Criminal Sub-Committee. He is a board Member of the Pennsylvania Innocence Project. From 2000-2005, he served as an Assistant U.S. Attorney in the Southern District of New York.

5) **Marc Bookman** serves as Director of the Atlantic Center for Capital Representation. He worked in the Homicide Unit of the Defender Association of Philadelphia from 1993 to 2000. Since 1995, he has taught at many death penalty conferences, including those sponsored by the National Legal Aid and Defender Association, and has been on the faculty of numerous hands-on trainings sponsored by the Bureau of Justice Assistance, the National Institute of Trial Advocacy and the Pennsylvania Association of Criminal Defense Lawyers. He has written widely about various criminal justice issues, and has published numerous essays in The Atlantic, Mother Jones, VICE and Slate. He has authored a book entitled, *A Descending Spiral: Exposing The Death Penalty In Twelve Essays,* which is scheduled to be published in Spring 2021.

A-i

6) **Ellen C. Brotman** is the founder of BrotmanLaw in Philadelphia, Pennsylvania.  Her practice focuses on professional responsibility and ethics, investigations, white collar criminal defense, and appellate advocacy.  Ms. Brotman has represented lawyers before the Disciplinary Board of Pennsylvania for over 20 years and frequently provides ethics opinions to lawyers and law firms on the interpretation of the Pennsylvania Rules of Professional Conduct.  Ms. Brotman is a past board member of the National Association of Criminal Defense Lawyers and currently sits on the board of the Pennsylvania Association of Criminal Defense Lawyers, where she serves on the Publications Committee as well as the Lawyers' Assistance Task Force.  Ms. Brotman is also a member of the Professional Guidance Committee of the Philadelphia Bar Association and the Professional Responsibility Committee of the Pennsylvania Bar Association.  Ms. Brotman has been recognized by Best Lawyers® / The Best Lawyers in America© and SuperLawyers® since 2007.  In 2014, she was one of the Legal Intelligencer's Women of the Year and in 2019 she received the President's Award from PACDL.  Ms. Brotman is Chair of the Board of the People's Emergency Center Foundation in Philadelphia, an organization dedicated to improving the lives of homeless families.

7) **Patrick J. Egan** is a partner and Associate General Counsel at Fox Rothschild LLP.  He has been a trial lawyer for 35 years.  He is a Fellow of the American College of Trial Lawyers, Adjunct Professor of Trial Advocacy at Temple University James Beasley School of Law and the University of Pennsylvania Law School, Former Chair of the White Collar Committee of The Eastern District of Pennsylvania Federal Bar Association, Advisory Board member of The Champion Magazine, and President of the Board of The Atlantic Center for Capital Representation.

8) **Robert H. Fiebach** is senior counsel at the law firm of Cozen O'Connor.  He clerked for Chief Judge Biggs of the Third Circuit and has practiced law since 1965—over 55 years. He is a past President of the Pennsylvania Bar Association, a past member of the Board of Governors of the American Bar Association, a past Chair of the ABA Standing Committee on Lawyers Professional Liability, a past chair and present member of the PBA Committee on Legal Malpractice, a member of the PBA Professional Ethics Committee and a Fellow of the American College of Trial Lawyers.  He has represented lawyers in professional liability and ethics matters for over 50 years.

9) **Lawrence J. Fox** is a partner at the law firm of Schoeman Updike Kaufman & Gerber LLP in New York City.  He is a senior scholar at the Yale Law School where he taught a lawyer ethics and professional responsibility course for a dozen years.  Before that, he taught the same course at Cornell University, the University of Pennsylvania, and Harvard University.

10) **James T. Giles** was formerly a judge of the United States District Court for the Eastern District of Pennsylvania, and served as its Chief Judge before he left the bench.  He currently is Of Counsel at Blank Rome LLP.  He also is a pro bono federal habeas corpus practitioner.

11) **John Grogan** has been a civil litigator for 25 years.  He is a partner at Langer Grogan & Diver, P.C.  He practices in the areas of civil rights, consumer rights, and antitrust law.  Mr. Grogan's practice often involves co-counseling relationships with non-profits and public interest organizations including the American Civil Liberties Union, HIAS-PA and the law clinics at the University of Pennsylvania and Villanova law schools.  Prior to entering private practice, Mr. Grogan was the co-founder and director of the Camden Center for Law and Social Justice, Inc., a non-profit law firm serving the needs of immigrants and the working poor.  Mr. Grogan is an adjunct lecturer at the University of Pennsylvania Carey School of Law and is a member of the American Law Institute.

12) **David Hoffman** is a Professor of Law at the University of Pennsylvania Carey School of Law and was previously a Professor at Temple University's Beasley School of Law.  He has taught contracts, civil procedure, and corporate law.  Before joining the legal academy, he was a litigator in New York City and a law clerk on the Eastern District of Pennsylvania.  He currently serves as an appointed Federal Special Master in that Court.

13) **Donald Joseph** was a litigator at the firm of Wolf Block for 40 years.  Following his law firm practice,  he has taught legal ethics for 20 years at Penn State Dickinson, Rutgers Law School – Camden, and Temple University's Beasley School of Law.  He has served since 2000 on the Pennsylvania Bar Association's Committee on Ethics and Professional Responsibility and the committee on Professional Liability.  For 30 years, he served on the Board of the Public Interest Law Center, formerly known as PILCOP, seven of them as its Chair or Vice Chair.

14) **Seth F. Kreimer** is the Kenneth W. Gemmill Professor of Law at the University of Pennsylvania Carey School of Law.  He has taught Constitutional Law and Constitutional Litigation for four decades and has over that period of time been a regular consultant to pro bono litigators in state and federal tribunals.

15) **Howard Langer** is the founding partner of the law firm Langer Grogan & Diver, P.C. He has specialized in practice before the federal courts over the last 45 years.  He is also a Professor of Law (Adjunct) at the University of Pennsylvania Carey School of Law where he teaches courses in federal litigation.  In 2019, he received the William J. Brennan, Jr. award of the VIP Program of the Philadelphia Bar Association for his pro bono work in litigation on behalf of the underprivileged.

16) **Fred Magaziner** was a partner at Dechert LLP (formerly Dechert Price & Rhoads) for 30 years and continues to do pro bono litigation at Dechert as a retired partner.  He is a member of the American Law Institute and a Fellow of the American College of Trial Lawyers.  He is on the adjunct faculty of both the University of Pennsylvania Carey School of Law and Columbia University Law School where he teaches litigation strategy, and he also taught trial practice with various institutions.

17) **Kevin Mincey** is a founding partner at the law firm of Mincey Fitzpatrick Ross, LLC. Mr. Mincey has practiced as a litigator in state and federal courts for 18 years, and prior to entering private practice he served as an Assistant District Attorney in the Philadelphia

A-iii

District Attorney's Office.  Mr. Mincey currently serves as the Secretary for the Board of Directors of the Pennsylvania Innocence Project.

18) **Eleanor W. Myers**, Associate Prof. of Law Emeritus, was a full time professor at Temple University Law School where she taught and published in Professional Responsibility.  She has taught legal ethics to law students, practicing lawyers, and judges both nationally and internationally and has published articles in English, Mandarin Chinese, and Japanese.  Since her retirement, she serves as a Senior Advisor to the Youth Sentencing & Reentry Project, Philadelphia, where she counsels and supports citizens returning from decades of incarceration to facilitate their reentry.

19) **John Myers** is Of Counsel at the law firm of Montgomery McCracken, Walker & Rhoads, where he has been a litigator and non-profit lawyer for 20 years.  Before entering private practice, he was a Public Defender in Philadelphia and a Chief Deputy City Solicitor for Philadelphia.  He has taught lawyers and law students for decades including at Penn and Temple law schools, and at many NITA seminars, CLEs and in-house trainings in Philadelphia and elsewhere.  His areas of teaching have included Criminal and Civil Procedure, Professional Responsibility, Trial Appellate Advocacy, Negotiation Skills, International Contracts and Compliance.

20) **Arthur Newbold** is a partner and the general counsel of Dechert LLP.  He has been a partner of the Dechert firm since 1974, is a former chair of its trial department, and is a Fellow of the American College of Trial Lawyers.

21) **Abraham C. Reich** has been at the law firm of Fox Rothschild LLP for the past 45 years, as a partner for 39 years.  He has served as a former Co-Chair and is currently Chair Emeritus of the firm.  Mr. Reich is a fellow of the American College of Trial Lawyers.  He serves on the Pennsylvania Bar Association's Committee on Ethics and Professional Responsibility as well as the Professional Guidance Committee of the Philadelphia Bar Association.  He has taught ethics and advocacy (a professional responsibility course) at the University of Pennsylvania Carey Law School for the past 16 years.  Mr. Reich also is a former Chancellor of the Philadelphia Bar Association.

22) **Teressa Ravenell** is the Associate Dean for Faculty Research and Development and a tenured full professor at Villanova University Charles Widger School of Law.  She joined the faculty in 2006 and has taught Civil Procedure, Criminal Procedure, Civil Rights, Police Conduct, and Race and the Law.  Her scholarship focuses on civil rights litigation and her articles have been published in Villanova Law Review, Temple Law Review, and Seton Hall Law Review.  Her most recent piece, *Policing Symmetry*, will appear in the North Carolina Law Review.

23) **David Richman** is currently senior counsel in the firm of Troutman Pepper Hamilton Sanders LLP and was a partner in the predecessor firm of Pepper Hamilton LLP for 34 years.  He has practiced as a litigator in the state and federal courts of Pennsylvania for 51 years, served as chief of the appeals division of the Office of the District Attorney of the City of Philadelphia, lectured on the professional responsibilities of prosecutors and

civil litigators, co-founded The Pennsylvania Innocence Project, and was an adjunct professor of law at Temple University's Beasley School of Law where he taught advanced civil procedure and remedies.

24) **James J. Rodgers** has been a partner at the law firm of Dilworth Paxson LLP for over 30 years, during which time he served as chair of the firm's ethics committee for over 20 years. He has counseled and represented attorneys in professional responsibility matters, and he has served as an adjunct faculty member at the Charles Widger School of Law at Villanova University.

25) **Andrew Rogoff** is senior counsel at Troutman Pepper Hamilton Sanders LLP and was a partner and associate in the predecessor firm of Pepper Hamilton LLP for 33 years. He has practiced as a litigator in state and federal courts of Pennsylvania and across the country for 43 years, including 5 years as an assistant district attorney in the Office of the District Attorney of Philadelphia. As an instructor for the National Institute for Trial Advocacy and as an adjunct professor at the University of Pennsylvania Law School and the Rutgers Law School, he taught professional responsibility in various trial advocacy courses.

26) **Louis S. Rulli** is a practice professor of law at the University of Pennsylvania Carey Law School where he has been a member of the faculty for 25 years and served as the law school's director of clinical programs for ten years. Prior to joining the Penn Law faculty, he was the executive director of Community Legal Services in Philadelphia. He is a founding member of the Pennsylvania Lawyer Trust Account Board (IOLTA) and a past chair of the Philadelphia Bar Association's Commission on Judicial Selection and Retention. He served on Pennsylvania's Ad Hoc Judicial Ethics Committee which drafted a revised judicial code of conduct for adoption by the Supreme Court of Pennsylvania. He currently serves in the Pennsylvania Bar Association's House of Delegates and is the Access to Justice Advisor to the Philadelphia Bar Association.

27) **Howard Scher** is counsel at the law firm of Buchanan Ingersoll and Rooney. He has practiced trial law since 1971, first with the Philadelphia Defenders' Association, as Chief of Appeals and Special Litigation at the Philadelphia City Solicitor's Office, as a trial attorney at Goodis, Greenfield, a partner at Montgomery McCracken Walker and Rhoads and, from March 1993 until December 2019, a partner at Buchanan Ingersoll and Rooney where he is now counsel. He has practiced in state and federal courts acting on behalf of plaintiffs and defendants principally in commercial matters and including several criminal defense cases. He has written and lectured and has been a fellow of the American College of Trial Lawyers and a fellow and officer of the International Academy of Trial Lawyers. For more than ten years, he served as a director, officer and ultimately chair of the board of the Pennsylvania Innocence Project.

28) **Theodore Simon** is the founder and principal of the Law Offices of Theodore Simon where he has had a state, federal and international practice for the past 46 years, signing as an amicus in his individual capacity. Mr. Simon is a Past President of the National Association of Criminal Defense Lawyers, the current Vice President of NACDL's

A-v

Foundation for Criminal Justice, and current President of Jenkins Law Library. He is the 2020 recipient of NACDL's prestigious award, the Robert C. Heeney Memorial Award, an award given annually to the one criminal defense lawyer that best exemplifies the goals and values of the Association and the legal profession.

29) **David Sonenshein** is the Jack E. Feinberg Professor of Litigation (Emeritus) at the Temple University Beasley School of Law. He formerly held the I. Herman Stern Professorship of Law at Temple. Before beginning a 35-year teaching career, he practiced law in Boston for 7 years as both a civil and criminal litigator. Prior to his retirement, he taught Criminal Procedure, Civil Procedure and Evidence at four American law schools as well as a number of European Law Schools. He has written numerous articles in law reviews and has co-authored more than 15 books on Evidence. He has trained hundreds of federal judges in Evidence for the Federal Judicial Center for more than 20 years. In addition, he is an elected Member of the American Law Institute and a Member of the Board of Directors of the Pennsylvania Innocence Project. He was appointed by the Governor Pennsylvania to the State Law Enforcement Citizens Advisory Commission in 2020.

30) **Matthew Stiegler** is an attorney in Philadelphia whose practice focuses on federal civil and criminal appeals. He serves as treasurer of the board of directors of the Third Circuit Bar Association, and he has taught appellate advocacy as a lecturer in law at the University of Pennsylvania Law School.

31) **Sozi Pedro Tulante** is a partner at Dechert LLP, where he has a practice in trial work and investigations. He joins this amicus brief in his individual capacity. Mr. Tulante has previously served as an Assistant United States Attorney in the US Attorney's Office in the Eastern District of Philadelphia and as Philadelphia's City Solicitor. As an Adjunct Professor of Law at the University of Pennsylvania School of Law, he has taught an upper-level class on prosecutorial ethics, among other subjects, and received the Adjunct Teaching Award in May 2020.

32) **David Wolfsohn** is a partner in the law firm of Duane Morris, LLP. He is a fellow of the American College of Trial Lawyers, where he serves as a member of the Pennsylvania State Committee and the Complex Litigation Committee. He has also served in numerous leadership roles in the American Bar Association's Section of Litigation. He has practiced law as a litigator in the state and federal courts of Pennsylvania and throughout the country for 32 years.

33) **Ellen C. Yaroshefsky** is the Howard Lichtenstein Distinguished Professor of Legal Ethics and Executive Director of the Monroe H. Freedman Institute for the Study of Legal Ethics at the Maurice A. Deane School of Law at Hofstra University. She teaches and writes in the field of criminal justice ethics and currently is the special ethics advisor to the Executive Committee of the ABA Criminal Justice Section.

A-vi

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January 2021, I caused a true and correct copy of the foregoing Brief Amici Curiae for Legal Practitioners and Legal Scholars and accompanying exhibit to be filed via this Court's electronic filing system, which will then send a notification of electronic filing to all counsel of record.

/s/ David Richman
David Richman